PORTO RICAN AMERICAN SUGAR REFINERY, INC., Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent.

No. 303. Argued March 20, 1944.—Decided May 12, 1944.

*Vicente Zayas Pizarro* for petitioner. *M. Rodríguez Ramos, Acting Attorney General, G. Benítez Gautier, Deputy Attorney General,*

and *Joaquina Pérez Cordero, A. de Jesús Matos, J. Correa Suárez,* and *A. Sandín del Manzano, Legal Advisers,* for respondent State Fund.

MR. JUSTICE SNYDER delivered the opinion of the court.

The facts herein are succintly stated in the order of the Industrial Commission, reading in part as follows:

"The Porto Rican American Sugar Refinery, Inc., an employer insured with the State Insurance Fund, during the fiscal years 1940– 41 and 1941–42 utilized the services of independent contractors Sucn. de Miguel Méndez and Sucrs. de Esmoris for the transportation of its products and by-products. One of the conditions of the transportation contract, according to the employer, was that the independent contractors would insure their workmen with the State Insurance Fund. But the employer admits that the said independent contractors failed to comply with the obligation to insure the workmen during 1940–41 and 1941–42. The employer also admits that both petitioner and the independent contractors did not include in their payrolls the wages paid to the workmen or employees who worked for said independent contractors when they filed the annual payrolls with the State Insurance Fund during the years 1940–41 and 1941–42.

"About the middle of 1942, Jacobo E. García, investigator of the State Insurance Fund, checked the books of the employer for the period from July 1, 1940 to June 30, 1941. When the above facts were ascertained therein, the manager, in imposing upon petitioner the preliminary quota for the year 1942–43, amounting to $4,857.97, likewise imposed upon him at the same time, an additional premium for the years 1940–41 and 1941–42, amounting to $2,406.27 for the former and $1,612.63 for the latter, to cover the risk of transportation of its products, which transportation was performed by the aforesaid independent contractors.

"The manager notified the petitioner on September 8, 1942, of the imposition of both the preliminary quota for the year 1942–43 and the additional quota for the years 1940–41 and 1941–42, and advised it that its policy would be in effect from July 1, 1942, provided that the amount of $6,447.89 was paid on or before September 23, 1942, and provided the amount of $2,428.98 was paid on or before January 2, 1943. The entire amount of the premium to be paid,

including the preliminary quota for the year 1942-43, and the additional quota for the years 1940-41 and 1941-42, amounted to $8,876.87.

"The employer paid the $6,447.89 which he was required by the manager to pay on or before September 23, 1942, in two instalments. One was paid on September 21, 1942, amounting to $1,455.33, and the other was paid on November 21, 1942, amounting to $4,992.56.

"The manager decided that the employer had not paid on time. He therefore declared him an uninsured employer for the period from July 1 to November 21, 1942."

The Industrial Commission affirmed the decision of the Manager of the State Fund. We granted the petition of Porto Rican American Sugar Refinery, Inc., to review the order of the commission.

 The petitioner first contends that the payment of $4,992.56 was as a matter of fact made within an alleged extension of time granted therefor, expiring on November 30, 1942. But there is nothing in the record to justify this contention. The record does show that on August 29, 1942, the petitioner submitted a memorandum to the Manager of the State Fund in an effort to convince him of the soundness of its position, and that this contention of the petitioner was not finally rejected by the manager until the assistant manager wrote counsel for the petitioner on November 17. But we find nothing in that state of affairs to warrant the conclusion that an extension of time for payment had been granted until November 30. On the contrary, the manager expressly advised the petitioner, as we have seen, that payment must be made on or before September 23, 1942. Consequently, the commission acted properly in holding that the petitioner was an uninsured employer from July 1, 1942, to November 21, 1942, when the payment of $4,992.56 was made. And as all the accidents involved in the cases before us herein occurred between July 1, 1942, and November 21,

1942, the petitioner must be treated as an uninsured employer for that period and for those accidents, even though it finally paid the total premium for the entire year, including the additional premiums for the fiscal years which had already expired. (*Sucrs de J. González & Cía.* v. *Industrial Commission,* 61 P.R.R. 295). The petitioner brought this result on itself by its failure to pay its premiums within the time fixed by the Manager of the State Fund (*Central Cambalache, Inc.* v. *Industrial Commission,* decided March 31, 1944, *ante,* p. 362.

 The petitioner does not contend that it was not required to carry workman's compensation insurance for the employees of the independent contractors herein.[1] Section 19 of the Act clearly compels it to do so, if its independent contractor do not (*Montaner, Mgr.* v. *Industrial Commission,* 59 P.R.R. 284; *Montaner, Mgr.* v. *Industrial Commission,* 57 P.R.R. 263). But it does contend that the Manager could not impose the premiums involved herein, for the reason that this action was not taken until after the fiscal years involved had expired. The petitioner cites as authority for its position the cases of *Central Boca Chica* v. *Treasurer,* 54 P.R.R. 404, and *Am. Railroad Co.* v. *Industrial Commission,* 61 P.R.R. 303. But those cases were different from the case herein. Those cases involved an *uninsured* employer from whom premiums could not be collected once the semester therefor had expired—under those circumstances, no insurance policy ever existed. But the instant case involved an *insured* employer who, according to a subsequent investigation conducted to determine if additional premiums should be assessed for the two previous fiscal years, failed to include in the reports of its payrolls the wages of employees

---

[1] The manager asserts in his brief that the policy in question specifically included the risks of transportation. The policy is not in the record before us, but the petitioner has not challenged this statement.

who should have been so included.[2] This case is therefore roughly similar on this point to *The American Railroad Company of Porto Rico* v. *Industrial Commission, ante* p. 598, decided May 10, 1944. Just as in that case (pp. 606–07) "To hold the contrary would be equivalent to permitting the defendant company to benefit and enrich itself as a result of its own fault, negligence or mistake in not complying with the law." And, it may be added, to hold otherwise would be to render the manager powerless to take steps to correct a condition created by the negligent or deliberate failure of an employer to include all his employees in the payrolls furnished to the manager.[3]

The order of the Industrial Commission will be affirmed.

Mr. Chief Justice Travieso did not participate herein.

---

[2] Section 25 of the Workmen's Accident Compensation Act, as amended by Act No. 160, Laws of Puerto Rico, 1942, provides that "Under no circumstance shall a policy be issued to cover only a part of the operations of an employer leaving other activities uninsured. All of the operations of the employer shall be covered by one sole policy . . ." And §19 provides, as we have seen, that unless an independent contractor is himself insured, "Every insured employer shall, on reporting his annual payrolls, include in said payrolls the wages paid to all the workmen and employees working for or employed by him, whether by the job or under some person with whom the employer contracted for the job, or under a contractor or independent subcontractor employed or contracted by said employer . . ."

[3] How far into the past the manager could reach to make such additional assessments is not before us, and we make no comment thereon. We do, however, agree with the statement in the Manager's brief that if in the case before us the petitioner's "contention be considered meritorious . . . there is no doubt that additional premiums could not be collected even for the immediately preceding year in view of the physical impossibility of liquidating in the first 15 days of the year or within a larger term the 10,000 workmen's insurance policies presently in force." See Sections 26–28 of the Act, as amended.